IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>THERESA ANNE CHABOT,<br><br>Defendant/Movant. | Cause No. CR 22-18-M-DLC<br><br><br>ORDER |

This matter was initially before the Court on federal pro se prisoner Defendant/Movant Theresa Anne Chabot's motion to vacate, set aside, or correct her sentence, pursuant to 28 U.S.C. § 2255. (Doc. 68.) This Court engaged in a preliminary screening of Chabot's motion and determined that her ineffective assistance of counsel claims, as pled, failed to state a claim under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). *See generally*, (Doc. 69.) Chabot was given 45 days within which to file an amended motion. (*Id*. at 7.)

Chabot failed to timely file an amended petition and failed to keep her address updated. *See e.g.*, (Doc. 70.) On August 25, 2025, based upon Chabot's failure to prosecute and comply with the Court's orders, the matter was dismissed. (Doc. 71.) On October 15, 2025, Chabot filed a motion requesting an additional 60 days to respond to the Court's order of June 24, 2025. (Doc. 73.) Chabot explains

1

that she was transferred multiple times and did not receive any documents from the Court until they were forwarded to her at the end of August. (*Id.*) Chabot is currently incarcerated in the Yellowstone County Detention Center. (*Id.*)

Chabot's motion for extension was granted, in part. Chabot was given 45 days within which to file an amended motion and was advised that if she pled viable IAC claims, the matter would be reopened. (Doc. 74.) Chabot complied by filing an amended motion on the Court's standard form. (Doc. 75.)

## Analysis

The Court has considered Chabot's renewed challenges to the validity of her sentence. For the reasons explained below, the amended § 2255 motion will be dismissed, and this matter will remain closed.

### A. Legal Standard

"A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States […] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To warrant relief under § 2255, a prisoner must allege a constitutional, jurisdictional, or otherwise "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441

U.S. 780, 783 (1979)(*quoting Bowen v. Johnston*, 306 U.S. 19, 27 (1939)). In contrast, "[e]rrors of law which might require reversal of a conviction or sentence on appeal do not necessarily provide a basis for relief under § 2255." *United States v. Wilcox*, 640 F. 2d 970, 973 (9th Cir. 1981).

### B. Ineffective Assistance of Counsel

Chabot presents nine claims which all fall under the broad umbrella of ineffective assistance of counsel ("IAC"). (Doc. 75 at 4-5, 7-8.) IAC claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Chabot must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694. In her amended motion, Chabot claims:

Claim 1: She informed McFarland that she wanted to go to trial, but McFarland informed her she had no choice but to accept the plea agreement and he failed to "counter" the plea offer.

Claim 2: McFarland failed to provide supporting documentation that she had no contact with the victims, which should have led to a minor role adjustment and significantly reduce guidelines.

Claim 3: McFarland coerced her into accepting a restitution amount because it would eliminated the Government presenting a witness at sentencing. Despite this, a witness was presented, and McFarland was surprised and unprepared. She agreed to the restitution amount under false pretenses.

3

Clain 4:   McFarland failed to subpoena medical records which would have provided crucial health considerations for sentencing.

Claim 5:   McFarland's claimed his friendship with the Undersigned would result in a lesser sentence and that his recommendation would likely be followed.

Claim 6:   McFarland failed to provide proof that Chabot fully cooperated with the Government once she was notified that she was being used as a money mule.

Claim 7:   McFarland failed to object to Government's argument at sentencing, which included misleading and false statements.

Claim 8:   McFarland misled Chabot about filing a Section 2255 motion, he did not explain the process or the corresponding timeline.

Claim 9:   McFarland informed Chabot to write a statement claiming to be a victim instead of accepting accountability in her role, angering the court and the Assistant United States Attorney, resulting in a harsher sentence.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland*, 466 U.S. at 668. "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).

As set forth above, to obtain relief on a claim of ineffective assistance of counsel, a defendant must show both that his attorney provided deficient performance, and that prejudice ensued as a result. *Strickland v. Washington*, 466 U.S. at 687-96.  To establish deficient performance, the defendant must show that

"counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation fell within the "wide range" of reasonable professional assistance. *Id*. at 689. Thus, in evaluating allegations of deficient performance the reviewing court's scrutiny of counsel's actions or omissions is highly deferential. *Id*. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effect of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. The defendant's burden is to show that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment. *Id*. at 687.

In her amended motion, Chabot fails to show that the acts counsel purportedly took and/or failed to take on her behalf were objectively unreasonable. For example, in Claim 1, Chabot faults counsel for "coercing" her into accepting a plea agreement and failing to counter the offer, these claims, however, are defeated by a review of the change of plea proceedings. It was conveyed during the hearing that the plea offer which Chabot was accepting was "the most favorable plea agreement offered to Ms. Chabot in writing." *See*, Change of Plea Trans. (Doc. 51 at 19.) Further, Chabot affirmatively advised Judge DeSoto that no one had threatened her or coerced her into taking the plea agreement. (*Id*. at 51.) It was

5

determined that Chabot was entering into the plea knowingly, intelligently, and voluntarily, after engaging in significant discussions with counsel. Finally, Chabot testified that she reviewed the plea agreement in detail with McFarland, as evidenced by her initialing each page of the document and providing her signature. (*Id*. at 16-17.) Thus, there is no indication that McFarland forced her to enter into the agreement or that she was unaware of its terms.

Similarly, in Claim 3 Chabot states McFarland coerced her into accepting a set restitution amount in order to avoid the Government putting on witness testimony related to the loss amount at the sentencing hearing. But Chabot did not agree to a loss amount in the plea agreement. The Government estimated the restitution amount to be $5,281,735.35, but Chabot explicitly retained the right to argue for a lesser loss amount at sentencing. *See*, Plea agreement (Doc. 16 at 2.) This provision was specifically discussed during the change of plea hearing. *See*, Trans. (Doc. 51 at 19-20.) Not surprisingly, restitution was a point of contention during the sentencing hearing. Following Special Agent Anderson's testimony, it was ultimately determined that the proper restitution amount was $2,043,340.18. *See e.g.*, (Doc. 49 at 79.) There is no evidence of coercion or of Chabot accepting a "set" restitution amount. Finally, to the extent that Chabot asserts McFarland was caught unaware by Special Agent Anderson's appearance at sentencing, the claim is not credible. McFarland was notified of the Government's intent to call

6

witnesses nearly two weeks before sentencing hearing.  *See*, Not. Sentencing Witnesses, (Doc. 35.)  There is no indication that McFarland performed deficiently relative to imposition of Chabot's restitution.

Relative to sentencing, Chabot contends that McFarland failed to present "supporting documentation" that she had no contact with the victims, which should have led to a minor role adjustment.  Chabot does not identify this supporting documentation or its contents.  But the Court notes McFarland argued for a minor role adjustment argument in the Defense's objections to PSR, *see* (Doc. 42 at 29, objection 10), and also during the sentencing hearing.  *See*, Trans. (Doc. 49 at 6-8.)  In deciding how to rule on the objection, the testimony from Special Agent Anderson was taken into account as it related to this issue.  Ultimately, the defense argument was rejected, and it was determined that a minor role adjustment was inappropriate in Chabot's case.  *See*, Trans. (*Id*. at 77-78.)  The fact that the argument was not successful, and the objection was overruled, does not equate to deficient performance by counsel.

Chabot next contends that McFarland failed to provide proof that Chabot fully cooperated with the Government upon becoming aware that she was being used as a money mule.  Again, Chabot does not explain what proof she believes should have been introduced.  While McFarland made this argument on Chabot's behalf, it was at odds with the evidence and testimony that was presented

throughout the proceedings. Specifically, there were indications that Chabot had been affirmatively notified by various entities that she had been acting as a money mule and, undeterred, continued to do so. The Undersigned observed, "[t]his offense stems from you being utilized as a money mule for years and refusing to stop, even after being informed by the Secret Service, the IRS and FBI, and notification by banks of suspicious activity on your accounts prior to collecting them." Sent. Trans. (Doc. 49 at 94.) Relative to the facts and evidence in this matter, McFarland did not provide objectively unreasonable assistance.

      Finally, in Claim 9 Chabot states that McFarland urged her to write a statement in which she claimed to be a victim, instead of accepting responsibility, which angered the Undersigned and resulted in a harsher sentence. But the record does not support a viable claim of deficient performance. First, Chabot did not submit a written acceptance of responsibility statement. *See*, PSR (Doc. 42 at 13.) Chabot not being a victim was an overarching theme of McFarland's sentencing memorandum and allocution. For example, during the sentencing hearing he directly addressed this issue, stating, "[Chabot's] aware of the impact that she has had in this case, and that's why it was a difficult one for me to even go into in this sentencing memorandum because every time I thought I was explaining the situation, it just sounded like excuses, and I know I'm not—she doesn't need me to make excuses for her." Sent. Trans. (Doc. 49 at 82.) Thus, it is simply not

believable that McFarland, as an experienced criminal attorney, would have instructed Chabot to portray herself as a victim. Moreover, the Undersigned observed that to the extent that Chabot indicated during her sentencing testimony that she felt bad for the victims, it was not considered to be a sincere statement of acceptance of responsibility. *See*, (*Id*. at 96.)

As to these five claims, Chabot has not made the requisite showing of deficient performance. In deciding IAC issues, courts "will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight." *Strickland*, 466 U.S. at 688. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003)(per curiam). The undersigned presided over sentencing and observed that McFarland was prepared and appeared to have pursued all pertinent avenues relative to sentencing. Chabot has not shown that defense counsel's performance fell "outside of the wide range of professionally competent assistance." *See Strickland*, 466 U.S. at 689. Accordingly, this Court affords counsel the high level of deference required under the prevailing professional norms. *Id.* at 689. McFarland did not perform deficiently.

In relation to the claims, Claims 4, 7, and 8, Chabot cannot show the attendant prejudice. While the Court is not suggesting defense counsel performed

deficiently, even assuming Chabot could make such a showing, she cannot meet *Stickland's* prejudice prong. The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. In order to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In Claim 4 Chabot faults McFarland for failing to subpoena medical records which would have provided "crucial health considerations" for her at sentencing. Chabot does not identify either the records or what crucial considerations would have been gleaned from the records. Notably, Chabot's medical information was provided to the PSR-writer, and included in the report. *See e.g.*, PSR (Doc. 42 at 17)(documenting Chabot's overall poor health, a torn carotid artery following a stroke, neck pain and major headaches, a back surgery which occurred in 2018, her gall bladder removal in 2010, a hiatal hernia, and generalized back issues, in addition to other health concerns following the birth of her second daughter). Moreover, these same issues were discussed during sentencing and given the appropriate weight and consideration as required in relation to the other 18 U.S.C. § 3553(a) factors. *See*, (Doc. 49 at 95.) Had McFarland obtained additional records, which would likely be duplicative in nature, Chabot does not explain how

10

the sentence would have been impacted by this information. Or, put another way, Chabot has not shown a reasonable probability that but for counsel's failure to obtain medical records, the sentence imposed would have been different. *See Strickland*, 466 U.S. at 695.

Similarly, in Claim 7, Chabot faults McFarland for failing to object to "misleading" and "false" statements made by the Government during sentencing. Not only does she fail to identify these statements, but she also fails to show resulting prejudice, that is how the outcome of her sentencing would have been affected by defense counsel's potential objections. *See, Strickland*, 466 at 694.

In Claim 8, Chabot alleges that McFarland misled her about filing a Section 2255 motion, by not adequately explaining the process or the corresponding timeline. But even if she was given inadequate advice, Chabot was not prejudiced. She filed a premature 2255 motion which was dismissed, *see* (Docs. 53 & 55), and she then timely filed the instant matter. *See*, (Doc. 68.)

Finally, to the extent that Chabot alleges McFarland claimed his friendship with the Undersigned would result in a lesser sentence and that his recommendation would likely be followed, *see* Claim 5, Chabot still does not state a viable claim. She has not alleged facts sufficient to support an inference that counsel performed unprofessionally or that there is a reasonable probability that but for counsel's performance, the result of the proceeding would have been

11

different. *See, Strickland*, at 687-88, 694.

### C. Conclusion

Chabot has not shown that McFarland provided unreasonable assistance or that she was prejudiced. Further, Chabot has not shown the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), she is not entitled to a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), *see also*, *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

Accordingly, the Court enters the following:

### ORDER

1. Chabot's amended motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 75) is DISMISSED. This matter shall remain closed.

2. A certificate of appealability is DENIED.

3. The clerk shall ensure that all pending motions in this case and in CV 25-93-M-DLC are terminated.

DATED this 21st day of January, 2026.

                                       */s/ Dana L. Christensen*
                                       Dana L. Christensen
                                       United States District Court Judge